## Case No. 336b.

### In re AMORY and LEEDS.

[Betts' Scr. Bk. 101.]

District Court, S. D. New York. 1843.[1]

BANKRUPTCY—ILLEGAL PREFERENCES AND TRANSFERS—ACT OF 1841—DISCHARGE.

[1. The receipt by certain creditors of an insolvent partnership of money and other assets on a composition and compromise of their claims, and in full discharge thereof, is a preference, within the prohibition of the bankruptcy act of August 19, 1841, § 3, (5 Stat. 440, c. 9,) when it appears that other creditors got nothing, and that the settlement was made after January 1, 1841,[2] and prior to the passage of the act, with the general authority and concurrence of both partners, though no particular acts are proved against one of them.]

[2. Similar settlements with certain creditors, to the exclusion of others, made after the act of 1841 went into effect, are preferences, within the prohibition of that act.]

[3. Preferences of certain creditors, to the exclusion of others, are not exempted from the prohibition of the bankruptcy act of 1841 because obtained through the urgent demands of such creditors, or by means of threats to bring actions for their claims.]

[4. A retiring partner of an insolvent firm to whom the other partners make payment in satisfaction of his interest in the partnership is not a creditor, within the meaning of the second proviso of the bankruptcy act of August 19, 1841, § 2, (5 Stat. 440, c. 9.)][3]

[5. Assignments and transfers of real estate and personal property by a bankrupt to his sister, who is not at the time a bona fide creditor, although fraudulent and void in law, are not a bar to the bankrupt's discharge, under the act of August 19, 1841, §§ 2, 4, (5 Stat. 440, c. 9,) unless such frauds were committed after the passage of the act.][3]

[In bankruptcy. In the matter of Jonathan Amory and Henry H. Leeds. Certificates of discharge which had been taken out were heretofore vacated. Case No. 336a. Certain questions were referred to the circuit justice, who died without answering them, and they are now submitted by agreement to the district judge. Discharges denied.]

Before BETTS, District Judge.

The following points in this case, which were referred to THOMPSON, Circuit Justice, who deceased without passing thereon, have been decided by BETTS, District Judge, at the request of the counsel for both parties:

First. If a debtor being insolvent since the 1st of January, 1841, makes compromise arrangements with a part of his creditors, and then pays to them a portion of their debts or assigns them assets of his estate in satisfaction of the debts and thereby exhausts the whole of his estate, having creditors who have received no part of their debts, are such payments or assignments prohibited by the bankrupt act?

Second. Does it vary the case if the same terms of compromise were offered to all of his creditors, by the insolvent at the time, and he was then able to fulfill the offer, or that the assets not accepted were subsequently expended in his necessary support and management of the business of the estate, or that they had become worthless from depreciation?

Third. Is a bankrupt whose application is voluntary barred a discharge, if, being insolvent, he by payment, assignment, or otherwise after the 1st January, 1841, gives or secures a preference of one creditor over another on the urgency and importunity of such creditor, and does it vary the case if the creditor threatens to bring suit, such payment or assignment not being made under actual coercion of law?

---

[1][Affirmed by circuit court. In re Amory, Case No. 336c.]

[2][See note at end of case.]

[3][See note at end of case.]

Fourth. If on the dissolution of a copartnership previous to January, 1841, and then actually insolvent, one partner retires and is paid by the others a sum of money in satisfaction of his interest in the partnership, (the remaining partners at the time contemplating the passage of a bankrupt law,) is such retiring partner a creditor, and such payment a preference within the meaning of the bankrupt law?

Fifth. Does the conveyance of real estate by a party deeply in debt to another not being a bona fide creditor or purchaser for valuable consideration—and which would be void as against creditors under the state law—the conveyance being made previous to the 1st January, 1841, and not in contemplation of the passage of any bankrupt law, bar the discharge of such debtor under the bankrupt act, his application being voluntary?

Sixth. Does it vary the case if such conveyance is made in contemplation of bankruptcy?

It appearing to the court upon the proofs in the case that after the 1st of January, 1841, and prior to the passage of the bankrupt act, [of August 19, 1841, (5 Stat. 440, c. 9,)] various creditors of the bankrupts, by the general concurrence and authority of both bankrupts, (but no particular acts of the bankrupt Amory in this behalf are proved,) received payments in money, and various other creditors by assignments and transfers of assets of the bankrupts of value, on a composition and compromise with the said creditors of their respective debts, and in full discharge and satisfaction thereof by such composition and part payment, and that numerous others then creditors of the bankrupt received no payment whatever on their respective debts then due. Wherefore it is considered by the court that such payments and assignments, was giving and securing a preference to one creditor over another against the prohibition of the bankrupt law.

And it further appearing to the court that the bankrupts after the passage of the bankrupt law, and after the same went into operation and effect, and in contemplation of bankruptcy, in like manner compounded and settled debts owing by them, by payment thereof in part in cash to some creditors, and to others by assignments and transfers of assets of the bankrupts of value, for the purpose that the said debts on such composition and payment should be released and discharged to the said bankrupts, and that the same were thereupon released accordingly, and that others, then creditors of the bankrupts, received no payment whatever on their debts then due, and that the bankrupts had not at the time means to make such payments equal to all their creditors. Wherefore it is further considered by the court that such payments and assignments were made for the purpose of giving such particular creditors a preference or priority over the general creditors of the said bankrupts.

And it is further considered by the court that preferential payments or assignments made by bankrupts to portions of their creditors are not exempted from the prohibition of the bankrupt law, because obtained through the urgent demands of such creditors, or by means of threats to bring actions therefor.

It is further considered by the court that the assignment and payment of assets and funds by the bankrupts to the retiring partner previous to the 1st January, 1841, if made in contemplation of the passage of a bankrupt law is not a preference to one creditor over another within the meaning of the second proviso of the second section of the act.

It is therefore adjudged and decreed by the court, that so much of the said objections and amended objections to the discharge of both the said bankrupts, as allege payments or assignments by way of preference as aforesaid. be allowed to the extent above particularized and specified, and no further; and it is further adjudged and decreed that such objections and amended objections so allowed, are in law a bar to the discharge prayed for—and in respect to the bankrupt Jonathan Amory, it is further ordered that all the objections and amended objections to his discharge, imputing a wilfull omission or refusal to conform to the requisites of the bankrupt act, and a fraudulent concealment of any of the effects or property of the said bankrupt, be disallowed and overruled.

And in respect to the bankrupt Henry H. Leeds, it appearing to the court that the various assignments and transfers of real estate and personal estate made by him to his sister Frances B. Koun, were all made prior to the passage of the bankrupt law, and it further appearing to the court upon the proofs that his said sister was not at the time of any of the said transfers and assignments a bona fide creditor of the said bankrupt, it is therefore considered by the court, that such transfers and assignments did not give or secure any preference or priority to one creditor over others of the bankrupt within the intent and meaning of the law, and is therefore no bar under the second section of the act to the discharge prayed for.

And it being considered by the court, that although such transfers or assignments under the proofs are void in law, and fraudulent as against creditors, yet frauds of that character can legally bar the discharge of the bankrupt, only when committed posterior to the enactment of the bankrupt law; and it being further considered by the court, that though upon the proofs it is made to appear that the bankrupt in and by such assignments and transfers placed property in the hands of his sister with intent fraudulently

to cover the same and enjoy the benefit himself, and ultimately to resume the full ownership thereof, yet that transactions fraudulent in themselves, consummated before the passage of the bankrupt act, are not frauds within the meaning of the fourth section of the said act, which bar a discharge and certificate to a bankrupt.

And it not appearing to the court that the said bankrupt has, since the passage of the said act, made any fraudulent transfers of property, or concealed his estate or property, or committed any other act of fraud in respect thereto or the proceedings under the act, it is considered and adjudged by the court, that all the objections interposed to the discharge of the said Henry H. Leeds (other that the objections before specially allowed) be overruled and disallowed.

No costs allowed to either party.

[NOTE. The bankruptcy act of August 19, 1841, § 6, (5 Stat. 440, c. 9,) conferred jurisdiction in bankruptcy on the United States district courts, and provided that the district judge "may adjourn any point or question arising in any case in bankruptcy, into the circuit court for the district, in his discretion, to be there heard and determined; and for this purpose the circuit court * * * shall * * * be deemed always open."

[Section 2 provides "that all future payments, securities, conveyances or transfers of property, or agreements made or given by any bankrupt, in contemplation of bankruptcy, and for the purpose of giving any creditor, indorser, surety, or other person, any preference or priority over the general creditors of such bankrupts; and all other payments, securities, conveyances, or transfers of property, or agreements made or given by such bankrupt in contemplation of bankruptcy, to any person or persons whatever, not being a bona fide creditor or purchaser, for a valuable consideration, without notice, shall be deemed utterly void, and a fraud upon this act; and the assignee under the bankruptcy shall be entitled to claim, sue for, recover and receive the same as part of the assets of the bankruptcy; and the person making such unlawful preferences and payments shall receive no discharge under the provisions of this act."

[The second proviso of section 2 declares that, if it shall appear to the court in the case of the bankruptcy proceedings that a voluntary bankrupt has subsequent to January 1, 1841, or at any other time, in contemplation of the passage of a bankrupt law, given any preference to one creditor over another, he shall not receive a discharge without the assent of a majority in interest of the creditors not so preferred.

[Section 4 provides "that every bankrupt who shall bona fide surrender all his property, and rights of property, with the exception before mentioned, for the benefit of his creditors, and shall fully comply with and obey all the orders and directions which may from time to time be passed by the proper court, and shall otherwise conform to all the other requisitions of this act, shall (unless a majority in number and value of his creditors who have proved their debts shall file their written dissent thereto) be entitled to a full discharge from all his debts. * * * And if any such bankrupt shall be guilty of any fraud, or willful concealment of his property or right of property, or shall have preferred any of his creditors contrary to the provisions of this act, or shall willfully omit or refuse to comply with any orders or directions of such court, or to conform to any other requisites of this act, * * * he shall not be entitled to any such discharge."]